Okay, our last case today is Brant v. Sarah Bush Lincoln Health Center. That is case number 4180778. For the appellant, David Damick, correct? And for the appellee, we have two attorneys arguing, Adam Chaddock and Brett Cole. All my notes provided by the clerk state that Mr. Chaddock will go five minutes and Brett Cole, 15 minutes. Is that correct? Yes, sir. That's correct. Great. Good job, Mr. Clerk. Thank you. You're welcome. You may proceed. Thank you, Your Honor. Please, Your Court. It's been instructed that judges in this court will be well-informed of the facts, so I'm not going to dwell on the many details and facts that have been well set out in the brief in this case. This case is properly, pledgedly approved. A continuing course of negligent treatment for a period of 15 years, approximately 15 years. It should have gone to the jury on that basis alone, if any dispute has happened. As the trial judge initially ruled, as this court has found and held in Polisky-Watkins previously, where the evidence raises the question of fact as to whether the defendant's treatment falls within the continuing course of negligent treatment, with the exception of the statute of repose, whether the various treatments were part of the continuous and unbroken course of negligent treatment and were so related as to constitute them continually wrong, it matters for the jury to decide. Mr. Danek, are you saying that in a case involving the continuing course of negligent treatment, that that question can never be determined by way of summary judgment? I'd be a fool to say that, Your Honor. There will be some times, as in the case law, where it's clearly, as a matter of law, there's no way that anyone can say that it would be proper under the case law that is out there. For instance, in some of the cases where someone has ceased treatment and then, maybe not clearly, but for all, much more likely than not, has gone back to see a doctor again many years later just for the purpose of establishing that continuing course and asking the question, and that is improper, I think, as a matter of law. A judge can look at that and say, we're not going through a trial on that basis, because, as the courts have said, in those situations, it would make a mockery of the basic idea of the continuing course and the statute of repose. There have been, even though you indicated that you weren't going to address the facts, some of the facts are very pertinent to that particular issue, including the timeframes involved, the gaps, I'll characterize them, in treatment. Was there a five-year gap between any type of treatment between 2004 and 2009? Between 2004 and 2009? Yeah. Okay. What treatment was there in that? Well, as we've set out both in detail and in several lists of the treatment and the statements made during those visits, actually, in 2004, this plaintiff, the patient of the defendants, returned from Alaska specifically to see Dr. Rees for this very problem. She followed up shortly after that in July of that year, and again, he informed her that her pain was osteoarthritis and that she needn't worry about it whatsoever. She returned home to Illinois in 2005, and she reported pain to the defendants in December of 2009, and that's really about it. Wait a minute. You lost me there. I got to 2004, then you mentioned 2005, then you mentioned 2009. Yes. Clarify, please. What happened in 2005? In 2005, I'm sorry. In 2000, I'm sorry. If I say 2005, I must be wrong. I haven't noted it here. It's between 2005 and 2009 is the period of time. So it was. I guess there was about a four-year period of time that she was not taking, maybe four and a half years. Well, I was just going by your brief on page 31. You have July 9, 2004, and then you have December 10, 2009. That's correct. Okay, so there's a five-year gap. Getting back to what I was initially asking about in terms of summary judgment, and you indicated that there might be a case out there that would involve a time period where the plaintiff had not treated such that it could be, as a matter of law, determined that the continuing course of negligent treatment theory would not apply. Is there a case in Illinois, a case that would consist of a time gap of five years or more and still qualify as a continuing course of negligent treatment? Your Honor, I don't know that there is. There are numerous cases. In fact, all of the witnesses in court speak in terms that there's no particular time period that matters so much. The Collins case, which finds that a nine-year period doesn't count, but that was exactly the case that I referred to before where the patient went back after that period of time to see the doctor in Florida clearly to pick up this argument and not continue the course whatsoever. Here what we have, Your Honor, is there are gaps in time. After all, our client was in Alaska at a certain point in time. She was back here, but she was told, and that's really why I wanted to argue and make the point, she was told by this doctor, this is the only doctor she trusted, the only doctor she went to. Her course was continuing even with the gaps, with this one doctor for this one problem. Now, we also treated a different problem for her, but this one problem, she is the only doctor that she would go to, the only doctor that she did go to. But perhaps more importantly, and the reason we put it first in our issues to be done, is that the equitable softball issue here. During each of these visits, he misled her grotesquely, and at the last, in 2004, in that period of time, he actually told her and told her husband, forget about it, there's nothing to be done. You've got osteoarthritis, you've got osteitis pupus. Basically, forget about it, there's nothing that we can do about it. So the fact that she might take another few years and suffer with that, and suffer in her relationship with it, when the one doctor that she trusted for this told her that you're just imagining things. In fact, at one point he told her, you're making this up, get over it. His words in her deposition were, get over it. And that's significant there in that regard, because this is a fiduciary relationship. And the Supreme Court couldn't be more clear on that. The Cunningham case went to Rule 1, went to Rule 2, and in fact, everywhere. This is clearly a case where, and probably better decided on that issue, while I believe that it's absolutely clear that any disputes as to whether treatment ended or began or anything like that, should go to the jury. The fact is, the defendant must be barred by equitable estoppel from arguing that in any possible way. There are 16 visits, or 15 times where he specifically told her, and where she brought it up to him, and she was specifically told it was not related to those anchors, she felt some other problem. And he did that in a manner without any evidence whatsoever, Your Honor, without any evidence whatsoever that she had any of those other conditions, and there are no medical records or any suggestions that she had any of those other medical conditions. Indeed, I mean, it's emphasized where the defendant is in the fiduciary relationship, as here. The point that this is a doctor-patient relationship, and without that fiduciary relationship, there might be some different qualifications in here. But the Supreme Court, both of Illinois and citing the Supreme Court of the United States, has said that in deciding this case, we need look no further than the maximum no man may take advantage of his wrong. That's a very important concept that governs this case. Your Honor, there is no point in time that Ms. Brandt went to any other doctor on this problem because this doctor was the only person she trusted on it. There's no other doctor anywhere, there's no other medical provider anywhere than these defendants who knew what was put in there, or should have known, and had the pictures to show that this anchor was in there, and did not tell her, and then affirmatively. And that's a big differentiation between almost all the cases said by the defendants. This is not a passive failure to diagnose, this is not a passive failure to notify. This is a case where the evidence was right in front of Dr. Riggs and the radiologist, where they found point tendons right where this metal screwdriver was sitting in her body, and they told her it was nothing related to anything else, and at one time she was told to go to a rheumatologist. An insulting actual reference to the fact that she had no rheumatological problem, and no rheumatologist would be able to do anything about that. They're not surgeons, and they're not this country's hospitals. It's impossible to reconcile the Supreme Court's mandates on this issue, and the elements that the Supreme Court has given us for equitable stop-hold on this, with the defendants' claim that in order to invoke this principle, the defendant must know he is lying. And that is the only challenge the defendants have made to the imposition of equitable stop-hold in this case. You acknowledge that aside from the Witherall cases, Witherall I and Witherall II, that the Supreme Court subsequent to Witherall in outlining the elements of equitable stop-hold include the element that the defendant must know that the facts that are being represented are false. Do you remember particularly referring to the Orlock case? I can say that there are a couple of very important points about that. One is its only citation to that point is the repeat of the DeLuna section there that has that in there. And DeLuna was not only not this type of case, because DeLuna was decided on a fraudulent concealment basis, so it did not make this determination. But it picked up that phrase, those things from the cases that did not deal with this fiduciary relationship. But DeLuna was a legal malpractice case, right? A legal malpractice case. Involving a fiduciary relationship. And in that case, there was absolutely no reference, at least in the recorded part of the case, that the attorneys knew that they were wrong when they misrepresented it. In fact, if you put that in there, the whole idea of a fiduciary relationship no longer means anything. And in fact, as pointed out in the Kagame case, there's an essential difference between the added, and this is where the legislature added the fraudulent concealment provision into statute after the Woodrow case. And the Kagame case, again, points out, just as Woodrow did there, that there's a substantial difference in this kind of case. That the defendant does not have to intend deceit. And you can't just say those words and say, well, no, they have to know that they're giving false information to somebody. They didn't. They don't have to intend deceit. They don't have to intend falsity. These two things are set out in every case that actually discusses equitable establishment. To suggest that this doctor had to know he was wrong and lie, look at Woodrow. Here's a doctor whose defense, and even in Clayton's case, at least as reported in both of those cases, wasn't sure, or said he wasn't sure as to whether or not birth control pills were going to cause blood clots sufficient to cause this woman severe heart and lung injury. He didn't know he was wrong, and there's nothing in there saying he knew he was wrong. The case itself and the reports on the case are truly based on the idea that he's the fiduciary, he gave false information, not that he knew that he was lying. In fact, in that case, as in this one, he didn't think what's the reason for somebody to falsely lie. That becomes, Your Honor, that becomes fraudulent concealment. Can you tell me again, just from an analytical standpoint, why the fiduciary relationship makes the difference here in terms of whether or not the witness's knowledge of falsity is relevant? Your Honor, I can tell you both from my own standpoint, but also that it's pretty important to send it out, because people trust their doctors, let's just keep it at that. They trust their relationship. They're supposed to know what's going on. Particularly, and the Supreme Court has a very elegant description of this, which I will not read to you now, but a very elegant description talking about how people put their trust and faith in the person who's supposed to have knowledge. They are never, the individual, the patient is never going to have the knowledge that their doctor has. Doctors go to doctors because each individual doctor has to trust somebody who has more knowledge about their problem in there. And that is the basis. I trust the doctor, the defendant. I trust you as the doctor to tell me what is right and where I should go. And that's the difference. If you tell me, No, you don't have a brain tumor, you have the flu, and go home, you know, I have a good basis to go home. And if you say, Well, why didn't you diagnose this as a brain tumor? Even if the doctor didn't look. I mean, frankly, if the doctor looked at the x-ray and saw a brain tumor and sent them home because they said it was a flu, it would be fraudulent. It would be fraud and concealed. And for whatever time you delay until it was discovered, it would clearly be, now statutorily, before by common law, it would cause a tolling of the statute of limitations. The fact is that that is all of the difference in the world. In the DeLuna case, it was a patent. There's not an indication, not one phrase that I've been able to find, and not any that I've seen any suggested, that the attorneys actually knew the problem with the patent. There wasn't one. And that's the difference. The delay is caused not by their fraud, because that's a separate statute. That's why there's a delineation. The delay is caused because I have absolute reason to trust the professional who I've come to, who says they're an expert, and I believe is an expert. And this case was, because the specialist in this field is the very person who did the surgery, who put the anchors in, who can tell me. You know, she came to him and she said, I feel like these anchors are coming out. She doesn't know that he left an extra screwdriver in there. He's the only person who could do that. He could have looked. He didn't. But she trusted that he did look. He did not fraudulently do anything. He negligently concealed this. He negligently gave her instructions that there was no problem in there. There was nothing to look at, even when she asked him specifically about it. For the moment, just play devil's advocate here. Please. Assume that the defense is correct in its assertion that in a medical malpractice case, in order to invoke equitable estoppel, the defendant, it would have to be established that the defendant knew that the representations were false. All right? Just take that as the playing field that I'm giving to you. What's the difference between that and fraudulent concealment? None. Absolutely none. So is your point, then, what's the point of having a separate fraudulent concealment statute if the equitable estoppel theory incorporates a requirement that we establish that the defendant knowingly misrepresented a fact? That is my point, Your Honor. I have yet to hear in any case from the defendants or anybody else why that would not be so. And that's what's precise in the Kagame case. It doesn't really have anything else to do with us. But that was particularly pointed out in their quote. I mean, the quote is, the main difference between general equitable estoppel and Section 13215 fraudulent concealment is that although they both involve the defendant doing something to lull or induce the plaintiff to delay the filing of his claim, equitable estoppel may apply when the defendant's actions are unintentionally deceptive. Equitable estoppel is the thing that sets the difference. And that absolutely is. If you take that out, if you take out the unintentional deception, there is no equitability. In fact, the case doesn't make any sense to them. I would also point out that why hasn't the Supreme Court said that? I think they did, Your Honor. I think the Withrow case has both said that. Since Withrow, though, they continue to list, what, six factors? They do. Regarding equitable estoppel. Factor number two is the one that Justice Harris has been referring to. It is. So why isn't that still a factor? Your Honor, I believe the entire text of Withrow I and Withrow II discusses the fiduciary relationship, the basic trust is there that replaces that statement. That's why Withrow can come out, cite those points, but still say that equitable estoppel is an unintentional deception that works. If it wasn't an unintentional deception, it would be here with intentional force. This is absolutely clear, and Withrow clearly indicates that. Well, it sure seems like Orleck could have said that, but they didn't. Actually, Your Honor, in Orleck, Orleck actually cites that. In fact, I've always hesitated to say this in front of a judicial panel. I'm going to say it now. Go for it. There's something that we experience in the reading of the law from the beginning of time until now, in this jurisdiction and every jurisdiction, and I'm going to call it, bluntly, lazy writing, where we pick up a previous statement there, and even though it's been modified slightly, we repeat it over and over. The substance of each of those cases sets the lie to that actual number two condition there. Every one of those cases from Cunningham, which developed the concept on, says that it can be unintentional. They don't have to know that they're doing it. It says it right in there. I will suggest that, if that were an argument in this case, there's actually sufficient evidence and pleading in this case to show that this doctor substantively knew, that is, he should have known. He put it in there. He knew it. He had all of the evidence of it. That's a knew or should have known. And making statements he made that was osteoarthritis without any basis in fact has been found in many cases in the law to be the same thing, and has made it impossible. You're talking about constructive knowledge here. That's not what we're talking about here. We're talking about actual knowledge. Right? For equitable estoppel. If absolute knowledge that the statement is false is required in equitable estoppel, there's no such thing as equitable estoppel, because it's exactly the same as fraudulent concealment. And I know of absolute evidence. We're second last time. Thank you. You'll have your vote. Who's going first? Mr. Cole. Mr. Cole? Okay, please. Good afternoon. Good afternoon. Mr. Clerk. Counsel. I'm Brett Cole. With me is Charlie Hughes, and we represent Dr. Roger Reeves. Summary judgment was appropriate in this case to the trial level because this case was filed outside of the statute of limitations and the post period without any obviation of either of those or tolling. The plaintiff cannot prove a continuous course of negligent treatment by Dr. Reeves with gaps of three years and eight years occurring in between his treatment. Also, there was no equitable estoppel to allow the case to proceed without proof of a continuous course of negligent treatment. The plaintiff, in her brief, omits certain facts, among them the last season treatment. There was a lot of discussion about the difference between 2004 and 2009. That's not the time period that's applicable to Dr. Reeves. Dr. Reeves saw this patient and discharged her in March of 2004, and then he didn't see her again until August of 2012. This is an eight-year period of time through which Dr. Reeves had no interaction with this patient. Also, throughout the plaintiff's brief and argument, the knowledge and information attributed to Sarah Bush Lincoln Hospital is also attributed to Dr. Reeves, and that's not consistent. I think that goes again to this period of time between 2009 and 2012, as well as prior to that when Dr. Reeves was treating his brand. But as a result of these bases, the ruling of the trial court should be affirmed. I'm going to kind of go through some of these facts and focus principally on Dr. Reeves' care, and then Mr. Chaddock can come in and kind of fill in some gaps. It's largely Dr. Reeves that we're talking about. In January of 2001, 18 1⁄2 years ago, he performed a bladder suspension surgery for the plaintiff, and she claimed a foreign body was left inside her during that procedure. He treated her between January and March of that year for surgical follow-up care, with instructions to return if needed. She didn't return to him until 2004. He ceased care of her in March of 2001, and then more than three years later, after feeling pain following a fall into her kitchen counter, the plaintiff called Dr. Reeves on June 8, 2004, and expressed some concern that she had a tumor in her pelvis. And he sees her again in his office on July 6 of 2004. He doesn't tell her there's nothing wrong with you. He doesn't insult her. He says, I don't know what's wrong with you. I think you should see a rheumatologist. That's not a witch doctor. That's not insulting. That's a referral to another medical professional, another physician, who can take a look at this. In addition to that, he ordered radiologic studies that were reviewed by another physician, and they came back unremarkable. He didn't see her again after that interaction. Oh, and I neglected to mention that he also conducted a physical exam of her in March of 2001 and July of 2004. He was not just ignoring her complaints. He didn't see her again for eight years in August of 2012. In the meantime, she had returned to Alaska. She said she moved there sometime between 2001 and 2004. She moved back to Illinois in 2009. She didn't see Dr. Reeves in 2009. She didn't see a rheumatologist that we know of. There's no evidence of it from what we can discover if she has no memory. I've seen a rheumatologist in Alaska, although she was instructed to do so by Dr. Reeves. Mr. Cole, may I interrupt you for a moment and bookmark where you're at mentally in terms of your presentation? I don't want you to run out of time before addressing the equitable estoppel issue and more so the black-letter law requirements of what's necessary to invoke equitable estoppel in a medical malpractice case. I've heard counsel refer to the Witherall cases and his suggestion that there is no requirement that the plaintiff establish the defendant's knowledge of the fact being represented as false. What do you say? I say that's incorrect. The Orlack case, which has been decided more recently in Witherall and includes citation and discussion of Witherall, it indicates fairly unambiguously that it's not knowledge but intent that is the factor there. And Orlack was a medical malpractice case involving a fiduciary relationship between a patient and a hospital, and those factors are misrepresentation or concealment of material facts, knowledge that the misrepresentation was untrue, lack of knowledge by the plaintiff, expectation of reliance by the hospital or physician, and reliance in good faith by the plaintiff and prejudice by that reliance. Orlack expressly distinguished himself from Witherall in the opinion, and I think this case is relatively synonymous with Orlack in terms of how those factors are parsed. Okay, counsel, I don't agree with or disagree with what you've just said, but how do you explain this statement, which comes from Orlack, and I think it actually cites Illumina, and it is as follows. It is not necessary that the defendant intentionally mislead or deceive the plaintiff. All that is required is that the plaintiff reasonably rely on the defendant's conduct or representations. How do you reconcile those? It's an intentional deception. That's not attributable to knowledge necessarily. It's an intentional deception. I don't understand. If you purposefully lie, how could that not be the same thing as an intentional misrepresentation? I believe that a purposeful lie is an intentional deception by definition, and to say that you don't have to have a purposeful lie is different than saying that knowledge of the event and then an obfuscation of that knowledge, the hospital in Orlack didn't necessarily have to believe that they were deceiving the plaintiff in order for it to be construed as equitable sovereign, which it was not. What is an unintentional deception? Those happen all the time. It's the fact of the... Is that a mistake? I would say a mistake or an understanding of an operative fact. The assertion is fact. That which you know is false is a deception. Yes. So isn't that what we're talking about here? Isn't that what the plaintiff is alleging? I think that becomes a fraudulent concealment, and I think the difference here lies in that a fraudulent concealment involves an affirmative act, an intentional deception, and an equitable estoppel is something that's more along the lines of a shield to the statute of repose rather than a sword that a fraudulent concealment would be, and it's not necessarily an affirmative act. And literal is distinguished in Orlack for that reason. So an affirmative, intentional misstatement of fact is not necessarily equitable estoppel. It doesn't... Equitable estoppel doesn't necessarily give rise to that, but that would be fraudulent concealment. And just for sake of clarification here, equitable estoppel does involve not just actual, as an element, not just actual knowledge but can include constructed knowledge. The knowledge element, it can be either actual or constructed knowledge. The defendant knew or should have known that which he was communicating was false. I don't believe that's what the Orlack case says. That's not what Orlack says, but in Vaughn, Vaughn v. Speaker, which is a 1988 Illinois Supreme Court case, says that the knowledge required by the second element of the equitable estoppel analysis need not be actual but may be implied. Well, Ed, I think that applies to this case favorably to the defense because Dr. Reeves had no constructed knowledge of the presence of this foreign body in the plaintiff. In fact, he took steps to obtain knowledge of whether there was a foreign body or something amiss by ordering radiology studies on several occasions between the time of the surgery and the discovery of the foreign body. And on each of those occasions, the radiology reports he received said nothing remarkable. In 2004, that was his basis for saying, I don't know, in addition to his physical exam, which reveals no pain on palpation, he said, I don't know what's wrong with you. I think it's an arthritis problem, potentially. You should go see a rheumatologist. And that's not hiding the truth or taking an action to set aside from responsibility or to delay her discovery of this. In fact, that is an action to push her to find the truth, to get to the bottom of what's going on. And in addition to that, another factor for equitable estoppel was good faith reliance on the representation. And he said, you should go see a rheumatologist. There is no evidence that she carried that out. How is that good faith reliance? How is that reliance at all? He didn't tell her there was nothing wrong with you. He said, I don't know what's wrong with you. And that's the big difference in the representation. And it's not a dispute of material fact. It's a dispute of characterization. The record is what it says. The depositions have been taken. And the exchanges and the medical records are there. He didn't say, there's nothing wrong if you go away. He referred her to another physician and said, I can't really treat you from Illinois while you live in Alaska. With regard to the continuous course of negligent treatment, I disagree with Mr. Danik about the scope at which it can be determined as a matter of law that there is no continuous course of negligent treatment. I think the law in the state of Illinois is fairly clear that it can be determined as a matter of law that there has not been proven a continuous course of negligent treatment. And here, relative to Dr. Reeves, there's a period of eight years. There's a period of three years between visits. That's not continuous. And the issue of negligence doesn't even need to come to that. Esports is a matter of law. In brief, with regard to equitable estoppel, the plaintiff has suggested that the defendants raise the issue of waiver because there was no pleading at the trial court level of equitable estoppel. That's the argument. And the plaintiff countered that that issue was waived because it's being brought up for the first time on appeal. I just direct the court to page 249b-2 of the record, which is a portion of Dr. Reeves' motion to adopt motion for summary judgment wherein the issue of pleading the elements of equitable estoppel is directly raised. Counsel, maybe I misread your brief, but it seems to me your argument that Witherell 1 and 2 can be read to eliminate the fourth element of equitable estoppel. Is that what your brief said? It's about intent. And there to say, I don't believe that the – I tend to go with the Orlik case as far as that goes. This isn't an issue of knowledge. It's an issue of intentional deception. And it's about intent, not about knowledge. So I did misread your brief. Your brief does not say that those Witherell cases essentially eliminate element number four of equitable estoppel. That's not what I intended to get at. Okay. Well, I misread it then. I'm going to wrap up so that Mr. Chaddick has some time to speak to you but the equitable estoppel is now applicable to this case and the treatment discussed by Dr. Rees is not continuing for negligence. Therefore, the finding of summary judgment by the trial court should be affirmed. Thank you. Thank you. Good afternoon. Mr. Chaddick, please. Adam Chaddick with the Office of Information Services, Lincoln Health Center. I, being last, will try to be not repetitive of my colleagues. But I do want to start by answering Justice Harris's first two questions from the plaintiff's hearing. The first question Justice Harris asked is whether this can be decided as a matter of law. This court has already decided that in the Jones v. Jedrow case. You said absolutely continuous care can be decided as a matter of law if the fact is supported. The second question that Justice Harris asked the plaintiff's counsel is is there any case that shows that there can be a five-year gap and still be considered continuous care? And, of course, the answer is no. And to point out the folly of the plaintiff's position, I want to point to another Fourth District case, the Follis v. Watkins case. That is a case where the continuous care was found to be present when the plaintiff saw a dentist semiannually every year between March of 1994 and March of 2009. She visited no other dentist for any of her ongoing dental problems. And during that time period, she had 48 consecutive visits with this dentist. Now, that's continuous care. And when you contrast that with what we have in this case, you really see the errors in the plaintiff's argument. In this case, we have huge gaps in time between the treatment that Dr. Reeds provided the patient. We have huge gaps in time between when this plaintiff sought care for the pelvic-type issues that were related to the original bladder surgery performed by Dr. Reeds. So contrast Follis that had 48 consecutive visits, and you look at this case where there are gaps of 3, 5, and 8 years in the care, and you have intervening care from providers in Alaska, some of whom in the emergency records from the Alaska hospitals, the Fairbanks Hospital, specifically noted that she was there to complain of urinary-type symptoms and diagnose the urinary tract infection, then you can certainly see the folly of the continuous care argument here. And then I think it's also important to remember the purpose of the statute of repose. The purpose of the statute of repose, as is stated in nearly every case cited to the court, either by the plaintiff or the defendant, is to curtail long-ended potential liability for medical malpractice claims. Now, as I sat today and listened to the plaintiff's arguments, he would essentially interpret equitable estoppel so as to do away with the statute of repose in any case. One of his examples was if you come into the doctor and you really have brain cancer, but the physician tells you, no, you've got the flu, go home, you're okay, well, that's a case where equitable estoppel should come in. But then if that's the case, then in every single medical malpractice case based upon misdiagnosis, every single one of them is subject to equitable estoppel, and the statute of repose means literally nothing. Because literally every case where you said, I think you have sinusitis, but you really have cancer, well, suddenly that's an issue where equitable estoppel would prevent the statute of repose from interacting. And finally, my last point is that this idea of equitable estoppel, whether or not element two is in or out, based on Weberil and then DeLuna and Orlak, I agree with Mr. Cole that I think those elements, that knowledge element is absolutely there. But to the extent that the court finds that those decisions are irreconcilable, I think you go with the most recent decisions, which are DeLuna and Orlak from 2006 and 2007, which absolutely have in the elements the language of knowledge. And here there was simply no knowledge. So unless you have questions, those are just the points I wanted to bring up. Thank you. I see none. Any rebuttal? A little bit. Okay. First of all, I'm pleased that the defense counsel brought up Jones-Detro and Wallace again. This court actually refused some rejection on both of those cases. It allowed them to proceed to trial if that's where they were going. And that's an important factor there. This court has favored that result as much as is reasonable. And I don't believe that this case falls outside that. In terms of other things, though, there are a few facts.  In no way was it ever filed at such expectations. Nobody's actually ever argued that it was. The Orlak case is an important one because it keeps getting referenced and is referenced by the trial court. But the Orlak case distinguished Whitville because the Orlak situation was just a bunch of passive things where the plaintiffs thought that they should have been notified about something because of some other notice that they got. Orlak said that they weren't going to look at Whitville because there was basically no ongoing negligence because of the passivity of the whole thing. There was no duty there whatsoever. Particularly in Orlak, they point out the difference between the Orlak case and the difference between the Orlak case and Whitville was there in Whitville, the defendant's doctors had repeatedly assured the plaintiff she did not have the condition from which she suffered and it was not caused by the birth control she was taking. And that's almost exactly our case here. In fact, you couldn't find a case that's more on force with Whitville. Orlak distinguished the facts of Orlak. We didn't have those affirmative things. Now, I stand in rebuttal here primarily because it infuriates me to hear people represent the facts that she had treatment for a urinary tract infection or suggested that she did sign on a doctor. She was not suffering from a urinary tract infection. Well, actually she was, but it has nothing to do with the problem that we're talking about. She actually even saw Dr. Reeves later on for a urinary tract or for a urinary problem. And he operated on her and still didn't do anything. And that probably still might not be one of the continuing negligent forces that failed to notice this, except that in that very visit, both before his operation and afterwards, where she and her husband were told by Dr. Goode, they specifically said it feels like something's broken up here, told them they were wrong and they should not. So a very affirmative statement. It's not that, oh, Dr. Reeves just said I don't know what's wrong, find something else. This case is based on the affirmative statement that said it's not this, it's got to be something else. So ORLAC really is not the guy in light here. It does not discuss equitable solvency to distinguish that case from its facts. And in terms of some of the other things you said, and I'll wrap that up, nobody claims that Dr. Reeves, the clinic doesn't claim Dr. Reeves left the screwdriver inside. He admitted it. He said he did. That's mine. And if I had looked, I would have seen that's what it was. And other than that, Your Honor, frankly, the facts were set out very clearly in the transcripts and the depositions that you already have. I can't think of anything else I can say. No? Thanks to all of you. Very good arguments. The case is submitted. Court stays in recess until further call.